**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 22-cv-02686-NYW-MDB

DANIEL TAFOYA,

     Plaintiff,

v.

ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,

     Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

Pending before the Court is Defendant's Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment"), [Doc. 31, filed July 31, 2023], filed by Defendant Allstate Vehicle and Property Insurance Company ("Defendant" or "Allstate"). Plaintiff Daniel Tafoya ("Plaintiff" or "Mr. Tafoya") opposes the Motion, [Doc. 44], and Defendant has replied, [Doc. 45]. The Court has reviewed the briefing on the Motion and the applicable case law, and concludes that oral argument would not materially assist in the resolution of this matter. For the reasons set forth herein, the Motion is respectfully **GRANTED in part** and **DENIED in part**.

### BACKGROUND

In 2020, Plaintiff submitted an insurance claim with Defendant arising out of water damage to his house in Colorado Springs, Colorado. [Doc. 5 at ¶¶ 2–4]. Dissatisfied with the estimate provided by Defendant's retained contractor, Plaintiff sought additional coverage, which Defendant has largely refused. [*Id.* at ¶¶ 7–9]. On March 23, 2022, Plaintiff filed this action pro se in Colorado state court. *See* [*id.* at 1]. Defendant removed

this case on the basis of diversity jurisdiction in October 2022,[1] [Doc. 1], and then filed an

Answer, [Doc. 10].  Counsel subsequently appeared for Plaintiff, [Doc. 13], who remains

represented.

On July 31, 2023, Defendant moved for summary judgment.  [Doc. 31].  The Motion

is now ripe for resolution.  Defendant interprets the Complaint as bringing one claim for

breach of contract and one claim for unreasonable delay or denial of benefits under Colo.

Rev. Stat. §§ 10-3-1115 and -1116.  *See* [Doc. 1 at ¶ 8; Doc. 31 at 10].  Plaintiff does not

suggest otherwise, *see generally* [Doc. 44], and the Court follows the Parties' lead.[2]

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational

trier of fact could resolve the issue either way.  A fact is material if under the substantive

law it is essential to the proper disposition of the claim."  *Crowe v. ADT Sec. Servs., Inc.*,

649 F.3d 1189, 1194 (10th Cir. 2011) (quotations omitted).  It is the movant's burden to

demonstrate that no genuine dispute of material fact exists for trial, whereas the

nonmovant must set forth specific facts establishing a genuine issue for trial.  *See Nahno-*

*Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  At all times, the Court will "view

the factual record and draw all reasonable inferences therefrom most favorably to the

---

[1] According to the Notice of Removal, Defendant was served with the Complaint in September 2022.  [Doc. 1 at ¶ 1].

[2] The Complaint explicitly references the statutory claim and then implies the contractual claim by seeking "contract damages."  *See* [Doc. 5 at 4].  Plaintiff filed the Complaint pro se, and the Court affords such filings a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016) (quotation omitted).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738 (4th ed. April 2023 update) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or the denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial, *see Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). For instance, "if th[e] evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

**ANALYSIS**

The Court begins by setting forth the material facts that are supported by evidence and undisputed for purposes of the Motion and then turns to Defendant's summary judgment arguments.[3]

**I.    Undisputed Material Facts[4]**

1.    Allstate issued Plaintiff House & Home Insurance Policy No. 807 726 533 ("Policy"), which covered a home located at 2605 Robin Drive, Colorado Springs, Colorado ("Residence"), and carried a $1,296.00 deductible.  [Doc. 31 at ¶¶ 1–3; Doc. 44 at 5 ¶¶ 1–3; Doc. 31-1 at 7–8].

2.    On March 24, 2020, Plaintiff notified Allstate of a potential loss at the Residence related to a water heater leak.  [Doc. 31 at ¶¶ 4–5; Doc. 44 at 5 ¶¶ 4–5; Doc. 31-2 at 2].

---

[3] As an initial matter, the Court rejects Plaintiff's contention that the Motion is untimely. Adopting the Parties' proposed dates, [Doc. 20 at 8], the Scheduling Order set the dispositive motions deadline in this action as July 29, 2023, a Saturday, [Doc. 21 at 8]. The Motion was filed on July 31, 2023, a Monday.  [Doc. 31].  Plaintiff argues, without authority, that unlike a deadline "set by statute or rule," the dispositive motions deadline set by the Scheduling Order did not carry over to the next business day.  *See* [Doc. 44 at 5].  Defendant responds that, under the Federal Rules of Civil Procedure, "if the last day [of a time period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  [Doc. 45 at 1–2 (quoting Fed. R. Civ. P. 6(a)(1)(C))].  Here, the Parties stipulated to a dispositive motions deadline, which was then incorporated into a court order.  [Doc. 20 at 8; Doc. 21 at 8]. Accordingly, the Motion is timely.

[4] As the Parties list over one hundred paragraphs of material facts, and many of these facts are repetitive or framed as disputed to varying degrees, the Court limits its discussion at this stage to those facts that are material to resolving the Motion. Additionally, the Parties identify some disputes of fact that only demonstrate denial of a specific portion of a statement of fact or fail to offer competent contrary evidence, in contravention of Rule 56(c) of the Federal Rules of Civil Procedure and Civil Practice Standard 7.1D(b)(4).  When this is the case, the Court accepts the portions that are not objected to or otherwise disputed as undisputed without further note.

3.      Allstate retained a loss mitigation company that entered the Residence, identified a municipal water meter as the source of the leak, and spotted mold.  [Doc. 31 at ¶¶ 7–8; Doc. 44 at 5 ¶¶ 7–8; Doc. 31-3 at 5].

4.      The mitigation team prepared a 95-page report with several hundred photographs of the Residence.  [Doc. 44 at 7 ¶ 1; Doc. 45 at ¶ 1; Doc. 44-11].

5.      An asbestos mitigation company was also retained, and Allstate approved and paid for asbestos abatement work, which involved removing the flooring in the Residence's kitchen and laundry room.  [Doc. 31 at ¶¶ 11, 13; Doc. 44 at 5 ¶ 11, 6 ¶ 13; Doc. 31-3 at 6; Doc. 31-4 at 1].

6.      Plaintiff required temporary housing because repairs would render the Residence's only bathroom unusable.  [Doc. 31 at ¶ 9; Doc. 44 at 5 ¶ 9; Doc. 31-3 at 5].

7.      On April 16, 2020, Andrew Muccino ("Mr. Muccino"), Defendant's adjuster, sent Plaintiff a form on which Plaintiff could list any damaged personal property.  [Doc. 31 at ¶ 14; Doc. 44 at 6 ¶ 14; Doc. 31-3 at 6–7].

8.      Allstate retained Paul Davis Restoration of El Paso County ("Davis Restoration") to prepare an estimate, and Davis Restoration visited the Residence for approximately thirty minutes[5] on April 17, 2020, taking photographs and measurements.[6]

---

[5] Mr. Tafoya supports many statements of fact, including this one concerning the duration of Davis Restoration's visit, by citing the "Tafoya Affidavit."  *See, e.g.*, [Doc. 44 at 7 ¶ 2]. The Affidavit of Daniel D. Tafoya ("Tafoya Affidavit") is a one-page document, sworn and notarized, in which Mr. Tafoya attests that he "adopt[s]" any statements of fact in the briefing on the Motion for Summary Judgment that cite to the Tafoya Affidavit "as though they were fully set forth in this affidavit."  [Doc. 44-13 at ¶ 4].  Although this is not the Court's preferred method of presenting evidence at summary judgment, Defendant does not argue, and the Court does not find, that this kind of affidavit presents any inherent obstacle to considering evidence that is otherwise proper on summary judgment.

[6] Citing the Tafoya Affidavit, Plaintiff asserts that it is an undisputed fact that Davis Restoration's representative "took few notes," "did not measure anything," and "did not

[Doc. 31 at ¶ 15; Doc. 44 at 6 ¶ 15, 7 ¶ 2; Doc. 45 at ¶ 2; Doc. 31-5 at 1; Doc. 44-13 at ¶ 4].

9.      Allstate's mitigation team noted damage in the Residence's crawl space, but Davis Restoration did not inspect the crawl space or include the crawl space in its estimate.  [Doc. 44 at 7–8 ¶¶ 3–5; Doc. 45 at ¶¶ 3–5; Doc. 31-5; Doc. 44-11 at 5; Doc. 44-13 at ¶ 4].

10.     Davis Restoration calculated the replacement cost of the damaged items at $21,120.37, with depreciation of $5,395.97, for an actual cash value of $15,724.40, and a payment of $14,428.40 after subtracting the $1,296.00 deductible.  [Doc. 31 at ¶¶ 16–17; Doc. 44 at 6 ¶¶ 16–17; Doc. 31-5 at 11].

11.     On April 28, 2020, Plaintiff advised Defendant that he disagreed with Davis Restoration's bid, in part because the representative did not look at the crawl space, and indicated that he would obtain another estimate.  [Doc. 31 at ¶ 18; Doc. 44 at 6 ¶ 18, 8 ¶ 14; Doc. 45 at ¶ 14; Doc. 31-3 at 8; Doc. 44-13 at ¶ 4].

---

take any pictures." [Doc. 44 at 7 ¶ 2].  Defendant disputes this statement of fact, attaching a "Photo Sheet" prepared by Davis Restoration, which contains dozens of pictures, and referring the Court to numerous measurements included in Davis Restoration's estimate, as attached to the Motion.  *See* [Doc. 45 at ¶ 2]; *see also* [Doc. 31-5; Doc. 45-1]. Notwithstanding the need to make inferences in the nonmovant's favor, a reasonable juror reviewing this evidence could only conclude that Plaintiff's characterization of the inspection is mistaken, so the Court finds no genuine dispute of material fact that Davis Restoration's representative took notes, photographs, and measurements during the inspection. *See Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) ("A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." (quotation omitted)).

12. Following several requests, Defendant provided Plaintiff with Davis Restoration's estimate on May 19, 2020.  [Doc. 44 at 8 ¶¶ 12–13; Doc. 45 at ¶¶ 12–13; Doc. 31-3 at 9; Doc. 44-13 at ¶ 4].[7]

13. On May 27, 2020, Allstate reached out to Plaintiff about the status of the additional estimate, and Plaintiff responded several days later that he was still working on getting it.  [Doc. 31 at ¶¶ 19–20; Doc. 44 at 6 ¶¶ 19–20; Doc. 31-3 at 9–10].[8]

14. Allstate contacted Plaintiff several times in June 2020 to discuss the status of the additional estimate and, on June 25, 2020, Plaintiff indicated that he would have

---

[7] Defendant makes a hearsay objection to part of this fact, [Doc. 45 at ¶ 12], but the fact does not appear to contain a statement, *see* [Doc. 44 at 8 ¶ 12 ("Allstate did not send the estimate on April 28 as promised.  Mr. Tafoya kept calling to get a copy.")].  Defendant also objects to Plaintiff's reliance on the Tafoya Affidavit on the grounds that it is "a self-serving affidavit."  [Doc. 45 at ¶ 12].  But Defendant never develops this argument at any length or explains why Plaintiff's affidavit is defective.  *See* [*id.* at ¶ 2].  The case Defendant cites regarding self-serving affidavits is distinguishable, as it involved an affidavit that was "merely conclusory and [did] not provide any factual bases for the inference" at issue.  *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).  To the extent the Tafoya Affidavit is based on Plaintiff's personal knowledge and non-conclusory, the Court finds that it may be properly considered on summary judgment.  *See Janny v. Gamez*, 8 F.4th 883, 900 (10th Cir. 2021) ("So long as an affidavit is based upon personal knowledge and sets forth facts that would be admissible in evidence, it is legally competent to oppose summary judgment, irrespective of its self-serving nature." (quotation omitted)).  This reasoning applies equally to Defendant's other barebones objections that the Tafoya Affidavit is self-serving.  *See, e.g.*, [Doc. 45 at ¶¶ 6, 8].

[8] Plaintiff's summary judgment facts include thirty-three "problems" with the Davis Restoration estimate which Plaintiff has identified, ranging from the estimate's treatment of the flooring and the kitchen cabinets to its omission of damage to the ceiling and fireplace.  *See* [Doc. 44 at 9 ¶ 18].  Defendant takes the position that it "cannot admit or deny what Plaintiff found to be wrong with Davis Restoration's estimate," but asserts that these statements do not create a genuine issue of material fact, noting that "Allstate advised that if additional damaged items were discovered during the repair process, it was entirely acceptable to prepare and submit supplements."  [Doc. 45 at ¶ 18 (citing [Doc. 31-3 at 15])].  For purposes of summary judgment, the Court accepts—as do the Parties—that Plaintiff identified various shortcomings with respect to Davis Restoration's estimate, including but not limited to those enumerated in the briefing on the Motion.  *See* [Doc. 44 at 9 ¶ 18].

the estimate by the end of that week[9] and was preparing the list of damaged items of personal property.  [Doc. 31 at ¶¶ 21–24; Doc. 44 at 6 ¶¶ 21–24; Doc. 31-3 at 10–12].

15.     Plaintiff declined Mr. Muccino's offer to provide a referral.[10]  [Doc. 31 at ¶ 25; Doc. 44 at 6 ¶ 25; Doc. 31-3 at 12].

16.     On July 1, 2020, Mr. Muccino advised Plaintiff that Allstate would send Plaintiff a check for $14,428.40, the amount payable under the Davis Restoration estimate, and that additional recoverable depreciation would be paid once Plaintiff completed repairs.  [Doc. 31 at ¶¶ 26–27; Doc. 44 at 6 ¶¶ 26–27; Doc. 31-3 at 13–14]. Mr. Muccino further indicated that Davis Restoration remained willing to complete the repairs, if authorized by Plaintiff, and that Allstate would continue to pay for Plaintiff's living arrangements for a reasonable time to allow the repairs to be completed.  [Doc. 31 at ¶¶ 28–29; Doc. 44 at 6 ¶¶ 28–29; Doc. 31-3 at 14].

17.     In a follow-up letter sent the same day, Allstate advised Plaintiff that, following the $14,428.40 payment, he had 180 days to seek coverage for additional items of repair not encompassed by the Davis Restoration estimate and associated payment. [Doc. 31 at ¶ 30; Doc. 44 at 6 ¶ 30; Doc. 31-6 at 1].[11]

---

[9] According to the evidence cited by Defendant, Mr. Muccino advised Plaintiff that he would need the second estimate by the end of the week and Plaintiff responded that he would have the estimate "today"—that is, June 25, 2020.  *See* [Doc. 31-3 at 12].  Any discrepancy is not material.

[10] The purpose or nature of the contemplated referral is unclear from the record, but the Court finds the fact of the offer may be material in the context of good faith.

[11] Plaintiff argues that the Court cannot consider the contents of this letter because it self-identifies as a "settlement agreement" and is therefore inadmissible under Federal Rule of Evidence 408.  *See* [Doc. 44 at 6 ¶ 30]; *see also* [Doc. 31-6 at 1 ("The following calculations summarize our settlement agreement.")].  But, to whatever extent the representations in the letter implicate Rule 408, the Court finds that the letter is not being offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," which are the purposes prohibited by

18.     On July 3, 2020, Plaintiff told Mr. Muccino that he would not accept Allstate's payment and would instead hire a private adjustor.  [Doc. 31 at ¶ 31; Doc. 44 at 7 ¶ 31; Doc. 31-3 at 14–15].

19.     On July 7, 2020, Mr. Muccino advised Plaintiff that, while Mr. Muccino understood Plaintiff's frustrations, Plaintiff had not provided any estimate identifying additional repair costs; further, as Davis Restoration could finish the contemplated repairs by September 29, 2020, Allstate would stop paying for Plaintiff's alternative living arrangements after that date.  [Doc. 31 at ¶¶ 32–33; Doc. 44 at 7 ¶¶ 32–33; Doc. 31-3 at 15].

20.     During this period, Plaintiff obtained, and discussed with Allstate, at least three estimates that exceeded Davis Restoration's:  (1) a $62,690.11 bid from HOMEfix dated June 26, 2020; (2) a $46,678.29 bid from Alpine Contracting dated July 1, 2020; and (3) a $37,973.22 bid from American Claims dated August 4, 2020.  [Doc. 44 at 13 ¶¶ 24–28; Doc. 45 at ¶¶ 24–28; Doc. 44-5 at 1, 5; Doc. 44-6 at 1–2; Doc. 44-7 at 15; Doc. 44-13 at ¶ 4].

21.     Over the phone, Allstate reversed its written position that additional estimates would be taken into account, suggesting to Plaintiff that the Davis Restoration estimate had been approved and could not be changed, and that additional estimates would not make a difference.  [Doc. 44 at 13–14 ¶ 28; Doc. 45 at ¶ 28; Doc. 44-13 at ¶ 4].[12]  However, Allstate also indicated that it would consider providing "supplemental

---

Rule 408.  *See* Fed. R. Evid. 408(a).  Indeed, Plaintiff does not argue that the letter is being introduced for such a purpose.  *See* [Doc. 44 at 6 ¶ 30].

[12] At this stage, the Court disregards Allstate's unexplained and generic hearsay objection.  *See* [Doc. 45 at ¶ 28]; *Troudt v. Oracle Corp.*, No. 16-cv-00175-REB-SKC, 2019 WL 1006019, at *3 (D. Colo. Mar. 1, 2019) (declining to address "wholly conclusory

coverage" based on additional estimates.  [Doc. 44 at 14 ¶ 31; Doc. 45 at ¶ 31; Doc. 44-13 at ¶ 4].

22.    On September 17, 2020, Plaintiff sent Allstate an estimate prepared by a public adjuster and lamented that he could not obtain agreement from contractors on what additional repairs were needed.  [Doc. 31 at ¶¶ 36–37; Doc. 44 at 7 ¶¶ 36–37; Doc. 31-8 at 1].

23.    Allstate notified Plaintiff on September 23, 2020, that it had reviewed his estimate and would pay another $3,707.58, with recoverable depreciation of $5,761.27. [Doc. 31 at ¶ 39; Doc. 44 at 7 ¶ 39; Doc. 31-3 at 17].

24.    Allstate also advised Plaintiff of his right to seek appraisal under the Policy if he disagreed with the estimates.  [Doc. 31 at ¶ 40; Doc. 44 at 7 ¶ 40; Doc. 31-9 at 1].

25.    Even with the September 23, 2020, adjustment in coverage, items such as the crawl space and shower would remain uncovered, and Plaintiff believed the Residence would be uninhabitable.  [Doc. 44 at 14 ¶ 33; Doc. 45 at ¶ 33; Doc. 44-13 at ¶ 4; Doc. 44-23].

26.    When Plaintiff tried to discuss the scope of the supplemental coverage, Allstate simply told him to read the estimate.  [Doc. 44 at 15 ¶ 39; Doc. 45 at ¶ 39; Doc. 44-13 at ¶ 4].

---

and completely undeveloped" hearsay objections to summary judgment evidence); *cf. also Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1211–15 (10th Cir. 2022) (finding that insurance company's district manager's statement was a nonhearsay statement of a party-opponent in suit against insurance company).  This reasoning applies to additional undeveloped invocations of the hearsay rule in the briefing on the Motion and is without prejudice to similar evidentiary objections being raised at trial.

27.     Plaintiff and Defendant did not reach an agreement with respect to coverage for the water damage to the Residence.  [Doc. 44 at 16 ¶ 44; Doc. 44 at ¶ 44; Doc. 44-13 at ¶ 4].

28.     Plaintiff has not cashed Allstate's checks and, since the initial loss mitigation efforts in 2020, he has not performed any repairs or retained anyone to perform any repairs on the Residence.  [Doc. 31 at ¶¶ 44–45; Doc. 44 at 7 ¶¶ 44–45; Doc. 31-10 at 40:16–41:12, 56:23–57:22].[13]

## II.     Breach of Contract

Allstate argues that summary judgment is proper on Plaintiff's claim for breach of contract, based on a failure to pay the amount owed under the Policy, on the ground that Plaintiff will be unable to meet his burden to show damages at trial due to his failure to timely disclose any expert witnesses by the expert witness disclosure deadline.  *See* [Doc. 31 at 15–18].  Defendant contends that, "while a homeowner like Plaintiff may be able to opine on the value of their home, or be able to identify what looks different after a damage-causing event, that does not mean they have the qualifications necessary to opine on the scope of necessary repairs or the costs of those repairs."  [*Id.* at 16].

In Colorado, a claim for breach of contract has four elements:  "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff."  *Matthys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1204 (D. Colo. 2015) (quotation omitted).  Defendant is correct that Plaintiff bears the burden to show damages

---

[13] When citing to a transcript, the Court refers to the docket number assigned by this District's CM/ECF system, but the page and line number of the original transcript, for the purpose of consistency.

for purposes of his breach of contract claim. *See, e.g., Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381 (Colo. 1993). And Plaintiff's failure to marshal such evidence at summary judgment would be sufficient grounds for entering judgment for Defendant. *See Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) ("When . . . the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." (quotation omitted)). Accordingly, the critical questions are (1) whether expert testimony is required to show damages for Plaintiff's claim as a substantive matter and, if so, (2) whether expert testimony is available to Plaintiff as a procedural matter.

First, Defendant refers the Court, [Doc. 31 at 15–16], to persuasive authority for the proposition that expert testimony is required to show damages for Plaintiff's breach claim. *See, e.g., Nesavich v. Auto-Owners Ins. Co.*, No. 16-cv-01493-PAB-STV, 2018 WL 3729513, at *5 (D. Colo. Aug. 6, 2018); *HM Hotel Props. v. Peerless Indem. Ins. Co.*, No. 2:12-cv-00548-DGC, 2013 WL 4507602, at *4 (D. Ariz. Aug. 23, 2013), *aff'd*, 624 F. App'x 520 (9th Cir. 2015); *Wickman v. State Farm Fire & Cas. Co.*, 616 F. Supp. 2d 909, 920–21 (E.D. Wis. 2009). In response, Plaintiff provides no authority for the proposition that he may show damages for breach of contract without employing expert testimony. *See* [Doc. 44 at 22–23]. Nor has he adduced any facts that would allow this Court to conclude that such information would be in the province of a lay witness. *See generally* [*id.*]. Instead, he suggests that he does not need expert testimony to prove what items are missing from Davis Restoration's estimate. *See* [*id.* at 22–23]. But that is a different issue, as Defendant's argument on summary judgment is that the replacement cost of

any omitted items cannot be reliably fixed by lay testimony alone for purposes of assessing damages. *See* [Doc. 31 at 15]. Damages are Plaintiff's burden. *Pomeranz*, 843 P.2d at 1381. Even if lay testimony could establish certain omissions from Davis Restoration's estimate, the Court finds that Plaintiff has failed to show that, as a legal matter, he may prove the damages he resultantly suffered without expert testimony. As Plaintiff does not seriously dispute the need for expert testimony, the Court turns to the second question.

Rather than discount the importance of expert testimony, Plaintiff's primary response to Defendant's expert-testimony argument appears to be that Plaintiff has, in fact, timely designated an expert witness who "will testify about Mr. Tafoya's damages by showing the extent of the loss and the necessary repairs." [Doc. 44 at 22]. Plaintiff refers to the inclusion of David Hahn ("Mr. Hahn") from American Claims in the initial disclosures exchanged in January 2023, [*id.*], several months before the expert disclosure deadline in May 2023 set by the Scheduling Order, *see* [Doc. 21 at 9]. Defendant replies that including Mr. Hahn in the initial disclosures did not excuse Plaintiff's duties with respect to the expert disclosure deadline and, in any case, Plaintiff did not identify Mr. Hahn as an expert in the initial disclosures. *See* [Doc. 45 at 2–3].

The Court respectfully agrees that Mr. Hahn has not been appropriately designated as an expert witness. Rule 26 provides that, "[*i*]n addition to the [initial] disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705," which concern expert testimony. Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). From the briefing on the Motion, it appears that Plaintiff did not properly disclose Mr. Hahn

as an expert by the expert disclosure deadline.  Even if the initial disclosure was somehow relevant—notwithstanding the cumulative language in Rule 26—the Court notes that Plaintiff did not identify Mr. Hahn as an expert witness in those disclosures.  *See* [Doc. 44-22 at 3].  Plaintiff states that he "disclosed Mr. Hahn's report as documents stamped Plaintiff 0065–0080," [Doc. 44 at 22], but that appears to refer to Plaintiff's production of the estimate prepared by American Claims in 2020, *see* [Doc. 44-7], and not to a properly disclosed expert report.  Indeed, the estimate does not disclose any of the requirements of Rule 26(a)(2)(B), which requires a written report prepared and signed by the expert.

Plaintiff has not properly disclosed Mr. Hahn as an expert, and discovery has long since closed.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), t*he party is not allowed to use that information or witness to supply evidence* on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1) (emphasis added).  Plaintiff makes no argument that his failure was substantially justified or harmless.  *See* [Doc. 44 at 22–23]. Meanwhile, Defendant suggests that considering Mr. Hahn's testimony would "severely prejudice[]" Allstate, as it "was not allowed to properly examine Mr. Hahn to determine if he is qualified to testify regarding these topics, what methodology he used to formulate his opinions and what opinions he plans to testify about."  [Doc. 45 at 3].

At the summary-judgment stage, Plaintiff has not pointed to any specific evidence of his damages, whether from Mr. Hahn or otherwise.  Under these circumstances, Plaintiff is unable to show damages for any breach of contract, and the Court will enter

judgment in Defendant's favor on the breach of contract claim.[14]  *See Bausman*, 252 F.3d at 1115.  The Motion is **GRANTED** with respect to this argument.

**III.    Bad Faith**

In a first-party claim for statutory bad faith by an insured against their insurer, such as Plaintiff's claim against Defendant, the insured must prove only that the "insurer denied or delayed benefits without a reasonable basis."  *Butman Fam. Inv. Ltd. P'ship v. Owners Ins. Co.*, No. 19-cv-01638-KLM, 2020 WL 1470801, at *8 (D. Colo. Mar. 25, 2020) (quotation and alteration omitted).  "When conflicting evidence exists, what constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."  *Bankr. Est. of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).  "However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law."  *Id.*

Allstate argues that Plaintiff's statutory bad faith claim fails because Plaintiff cannot establish that Allstate acted inconsistently with industry standards.  *See* [Doc. 31 at 14]. Defendant contends that it "conducted a timely and reasonable investigation of Plaintiff's insurance claims, and its coverage position was supported by competent and compelling evidence."  [*Id.* at 10–11].  In Defendant's view, the coverage decisions it made were, at most, "fairly debatable," and therefore reasonable.  [*Id.* at 11].  Defendant also repurposes

---

[14] It appears that Defendant limits its expert-evidence argument to Plaintiff's claim for breach of contract, as the Motion directs the argument at Plaintiff's "damages" claim "for additional benefits."  *See* [Doc. 31 at 15].  That approach follows from the Tenth Circuit's observation that Colorado's bad faith statute "contains no requirement that an insured provide evidence of specific business loss or damages."  *Rockhill Ins. Co. v. CFI-Global Fisheries Mgmt.*, 782 F. App'x 667, 673 (10th Cir. 2019) (citing *Hansen v. Am. Fam. Mut. Ins. Co.*, 383 P.3d 28, 38 (Colo. App. 2013), *rev'd on other grounds*, 375 P.3d 115 (Colo. 2016)).

its argument on the expert disclosure deadline, suggesting that Plaintiff cannot show that the Davis Restoration estimate was unreasonable with lay evidence alone.   *See* [*id.* at 12].  Allstate stresses that "Plaintiff never conducted repairs, never provided Allstate with an estimate from a contractor of his own choosing, and generally did nothing to advance the claim or establish what damages were not adequately addressed by the Paul Davis Restoration estimate."  [*Id.*].  Mr. Tafoya responds that the Davis Restoration investigation was "incompetent"; that Allstate did not consider all available evidence; that Allstate adopted Davis Restoration's estimate without providing Plaintiff an opportunity to provide input, rebuffing his attempts to challenge the assessment; that Defendant unreasonably adopted an estimate that would leave the home uninhabitable; and that Allstate ignored Plaintiff's alternatives estimates and suggested that they could not affect the coverage decision.  *See* [Doc. 44 at 16–21].

The Court respectfully concludes that genuine disputes of material fact preclude summary judgment on this theory.  Based on the Parties' evidence-supported statements of fact, there is conflicting evidence with respect to how Allstate addressed Mr. Tafoya's concerns in connection with the claims process and evaluated his water loss claim.  That conflict is material to the determination of whether Allstate investigated Plaintiff's insurance claim in good faith or departed from industry standards.  Specifically, the record on summary judgment outlined above reasonably supports two critical rival inferences concerning Defendant's conduct with respect to Plaintiff's claim.  The inference sought by Defendant is that Allstate gave Plaintiff a full and fair opportunity to point out any defects in the Davis Restoration estimate, but Plaintiff did not take advantage of that opportunity.  Meanwhile, the inference sought by Plaintiff is that Defendant suggested in writing that it

would consider additional estimates, but made clear on the phone that, in reality, the Davis Restoration estimate was inflexible and could not be supplemented, notwithstanding the reasonable concerns and rival estimates conveyed by Plaintiff.  The fact that Defendant provided limited supplemental coverage in September 2023 based on an estimate later provided by Plaintiff muddies, rather than clears up, this situation.  After all, Defendant has argued for summary judgment by suggesting that Plaintiff "never provided Allstate with an estimate from a contractor of his own choosing," [Doc. 31 at 12], but Defendant also admits that Plaintiff obtained, and discussed with Allstate, several contractor estimates, *see, e.g.*, [Doc. 44 at 13–14 ¶ 28; Doc. 45 at ¶ 28].[15]  Defendant further admits that Plaintiff identified the crawl space damage as missing from the Davis Restoration estimate as early as April 28, 2020.  And Defendant has not contested Plaintiff's position that the repairs contemplated by Allstate would leave the Residence uninhabitable.  *Compare* [Doc. 44 at 14 ¶ 33], *with* [Doc. 45 at ¶ 33].

Confronted with Plaintiff's evidence, the Court cannot conclude that every reasonable juror would find in Defendant's favor.  *See Hunderson v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-02720-CMA-SKC, 2022 WL 4365977, at *2 (D. Colo. Sept. 21, 2022) (denying summary judgment where "[b]oth parties ha[d] presented evidence to support their respective positions regarding reasonableness").  Indeed, a reasonable juror may well conclude that Defendant's investigation was unreasonable. *Cf. Nyborg v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01918-RM-KLM, 2022 WL 3017106, at *4 (D. Colo. July 29, 2022), *report and recommendation adopted*, 2022 WL 3369544 (D. Colo. Aug.

---

[15] As discussed above, the Court cannot credit Defendant's undeveloped hearsay objection and concern that the Tafoya Affidavit is self-serving.

16, 2022) ("An [insurer's] investigation is unreasonable where it fails to consider evidence that may support an insured's claim.").

Defendant's legal arguments do not persuade the Court otherwise. First, the expert-testimony issue is not dispositive in this context because, as Plaintiff's authority indicates, "[i]f the reasonable investigation and denial of an insured's claim is within the common knowledge and experience of ordinary people, then expert testimony is not required" to show that the insurer acted unreasonably. *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004). Moreover, to whatever extent Defendant's coverage decision may be fairly debatable, Colorado courts hold that "fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010). Although Defendant is correct that nearly every fact has been admitted for purposes of this Motion, [Doc. 45 at 11], the Court finds that these facts may cut both ways or even conflict with one another. *Compare, e.g.*, [Doc. 31 at ¶ 30], *with* [Doc. 44 at 13–14 ¶ 28]. Plaintiff's evidence thus creates a jury question with respect to Defendant's good faith that cannot be resolved on summary judgment. *See Bankr. Est. of Morris*, 192 P.3d at 524. The Motion for Summary Judgment is respectfully **DENIED** as to the statutory bad faith claim.

## IV.    Depreciation

Finally, Defendant argues that Plaintiff cannot recover unpaid depreciation in this action because he did not timely complete repairs on the Residence. *See* [Doc. 31 at 14–15]. It is not clear how this theory of recovery fits into the case.

To recover depreciation under the Policy, Plaintiff must "rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value

payment."  [Doc. 31-1 at 36].  Defendant sent such payments to Plaintiff in 2020, and Plaintiff has not pursued any repairs, so Defendant argues that, "pursuant to the unambiguous policy terms, Plaintiff has no entitlement to the depreciation amounts." [Doc. 31 at 15].  Plaintiff responds that the 180-day clock never began to run because Defendant's checks were conditional settlements, and "[t]ender of an absolute obligation pursuant to a contract must be unconditional or the tender is invalid."  [Doc. 44 at 22 (quoting *Starke v. Allstate Ins. Co.*, 771 P.2d 3, 4 (Colo. App. 1988), *rev'd*, 797 P.2d 14 (Colo. 1990))].  Defendant does not address this argument in reply.  *See generally* [Doc. 45].

The Court concludes that the recoverability of depreciation is not properly before the Court at this time.  First, to the extent depreciation is recoverable under the Policy, the issue is largely controlled by the Court's resolution of Plaintiff's breach of contract claim, as the only relevant damages cause of action here appears to be one count of breach of contract.  The Court has already determined that Plaintiff cannot recover on his breach of contract claim because he must use expert testimony to show damages but has not timely disclosed any expert witnesses.  Without any means to show that he is owed damages, let alone depreciation damages, it seems that Plaintiff cannot recover them.  *See Bruce v. Pac. Specialty Ins. Co.*, 755 F. App'x 731, 734 (10th Cir. 2018) ("[T]he question of depreciation [can] only be established by expert testimony."); *see also* [Doc. 45 at 3 (arguing that the Motion should be granted because "Plaintiff cannot establish the essential element of damages and Allstate is entitled to judgment in its favor")].

Relatedly, to the extent the depreciation at issue is tied to Defendant's original payments—which seems unlikely, considering that Plaintiff has repudiated those

payments—Plaintiff does not explain how he can seek to recover a different measure of value than Defendant's original payments *and* unpaid depreciation tied to the original payments.  *See Nat. Wealth Real Est., Inc. v. Cohen*, No. 05-cv-01233-LTB-MJW, 2007 WL 201252, at *6 (D. Colo. Jan. 23, 2007) ("In the typical case, [a plaintiff may] pursue alternative theories until summary judgment.").  The Court also notes that the Complaint does not mention unpaid depreciation at all and, considering the undisputed fact that Plaintiff has not pursued any repairs as of late 2023, it appears that Plaintiff would have no reasonable basis for seeking to recover such depreciation anyway.  *See generally* [Doc. 5].  In light of Plaintiff's emphasis on the Davis Restoration estimate's shortcomings, his minimal argument concerning depreciation, and the absence of depreciation from the operative pleading, it appears that Defendant has briefed this issue out of an abundance of caution.  Plaintiff has elected to focus his claims on the valuation of the loss, as opposed to Defendant's failure to pay depreciation with respect to a valuation which Plaintiff contests.  Considering the myriad issues with respect to the matter of depreciation, the Court finds that it is not properly before the Court at this time.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment [Doc. 31] is **GRANTED in part** and **DENIED in part**;

(2)    Plaintiff's only pending claim in this action is for unreasonable delay or denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116; and

(3)    A Telephonic Status Conference is **SET** for **January 5, 2023, at 10:00 a.m.**, for the purpose of setting a Final Pretrial/Trial Preparation Conference and

trial in this matter.   The Parties should meet and confer in advance concerning their availability for trial settings in or after April 2024.   The Parties shall participate using the following dial-in information:   888-363-4749; Access Code: 5738976#.

DATED:  December 22, 2023                              BY THE COURT:

                                                       _____
                                                       Nina Y. Wang
                                                       United States District Judge